PATRICK EVERS and Another, Appellants, *v.* LONG ISLAND CITY, Respondent.

*Municipal corporation — liability of, for defective sewers — its duty to construct is judicial; its duty to keep in repair is ministerial.*

Where a sewer has been constructed by a commission appointed under a special act of the Legislature and has been accepted by a municipal corporation, the negligence of the municipal corporation in maintaining the same creates a liability against it in favor of a person injured by such default on its part. It is the duty of a city to keep its sewers in repair, so far as the property connected with them by private drains is concerned, and for its neglect so to do it is liable to persons who suffer thereby an injury which would not have occurred if the sewers had been maintained in good order.

If a city sewer is negligently permitted to become obstructed or filled up, so that it causes the water to flow back into cellars connected with it, there is a liability therefor on the part of the city, which is bound to preserve and keep the sewer in repair, so that it shall not become a source of annoyance to others.

Although the duty resting upon a city to make streets, sidewalks and sewers is judicial in its nature, yet, after they are constructed, the duty of keeping them in repair is ministerial, and an omission in the performance of that duty imposes a liability on the city in favor of the party injured.

APPEAL by the plaintiffs, Patrick Evers and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 20th day of January, 1894, upon a dismissal of the complaint directed by the court after a trial at the Queens County Circuit before the court and a jury.

*Lyman W. Redington,* for the appellants.

*William E. Stewart,* for the respondent.

DYKMAN, J.:

This is an action to recover damages for injuries sustained by the plaintiffs by reason of the negligence of the defendant in the construction and maintenance of a sewer in Long Island City.

At the close of the plaintiffs' case the complaint was dismissed, and from the judgment of dismissal the plaintiffs have appealed.

The plaintiffs are in possession of a house and lot on Flushing avenue in Long Island City. There is an earthen sewer pipe fifteen

or eighteen inches in size in Flushing avenue, and the plaintiffs con-
nected their cellar with this sewer, by permission at the time of the
erection of their dwelling, by a six-inch pipe which is higher where
it runs into the cellar by two or three feet than the main sewer pipe.
The water closet of the plaintiffs was in the cellar of the house.

The cellar was dry and the plaintiffs had a stove in it and used it
for a summer kitchen until they were driven out by the sewage
which came into the cellar from the sewer.

The Flushing avenue sewer runs from a point east of the plaintiffs'
house westerly to the East river, and carries off the sewage of a large
and thickly populated district, and receives sewage from premises
above and beyond those of the plaintiffs.

The testimony tended to show that the main sewer was built by
commissioners some years ago, and that they had made a report in
writing and turned over their books and papers to Long Island City.
Patrick Gleason, a witness for the plaintiffs, testified that he was
mayor of Long Island City for six years ending January 21, 1893;
that his attention was first called to this sewer in 1886, when an
alderman of Long Island City; that as mayor of Long Island City
he signed contracts for the maintenance and cleaning of these sewers
on Flushing avenue; that the city itself cleaned them and entered
into contracts therefor, and the mayor and commissioner of public
works signed the contracts; that there was a general complaint for
four or five years; that filth from the sewer came into the cellars of
residents on the avenue; that he caused a map to be made by an
engineer appointed by the board of health; that there was a
pitch in this sewer both ways some 300 or 400 feet east of the plain-
tiffs' premises; that the witness recommended the common council
to appropriate money to reconstruct the sewer according to the map
made recently by the engineer; that the reason filth from the sewer
came into the cellars was because the sewer was not properly
constructed.

Two witnesses testified that they were employed by Long Island
City by resolution of the board of aldermen in May, 1893, to do
work about this sewer in its reparation.

Another witness testified that he had the contract in writing from
Long Island City for cleaning this sewer, and cleaned it for the last
time in May or June, 1893. It appeared from the testimony that

there was for years an outlet in the main sewer some 300 or 400 feet east of the house of the plaintiffs, where there was a connection made that let the excessive sewage run out upon certain waste lands on the north side of Flushing avenue ; that this outlet was a break or opening in the sewer and the pipe both ; that somebody had broken out the brickwork of the manhole at this point about three feet from the bottom and had inserted an earthen pipe into this opening to let the water or sewage out upon the waste land north of Flushing avenue, thereby relieving the strain on the main sewer. It further appeared that this outlet was closed up by order of the board of aldermen of Long Island City in May, 1893, by two men employed by the city, who stopped it up with brick and cement.

The testimony on the part of the plaintiffs also showed that before this outlet or break-hole was closed up they only had trouble after very heavy storms, and then only clear water backed up through their connecting pipes into the cellar, but after the hole or outlet was closed in May, 1893, a very little rain forced sewage matter, water closet deposits, papers and filth from the main sewer up through the connecting pipes with a rush into the cellar, sometimes two feet in depth.

Since May, 1893, this has occurred five or six times, and it sends foul and noxious odors through the house so that the plaintiffs were unable to use the cellars except to pass to the water closet and back, although previous to that time they had used it for a summer kitchen. It appeared that measurements had been taken of the depth of sewage in different manholes commencing at the premises of the plaintiffs, and going east with the following result : Eight inches, ten inches, nine inches and twelve inches. These measurements included the portion where the witness Gleason testified the sewer pitched both ways and was not properly constructed. One witness examined the sewer at the locality in question, and went down into it and found a stump of a broom and chips in it, and the sewage stationary, being about ten or twelve inches in depth. It appeared that the plaintiff Patrick Evers had notified the mayor, aldermen, health commissioners, city inspector, and commissioner of public works of Long Island City several times of the trouble with the sewer, and requested relief, but nothing was done.

The plaintiffs suffered loss from the sewer through damage to per-

sonal property, sickness in their families, damage to the household and other annoyance and inconvenience.

It appears from this recitation of facts that the sewer in question though constructed originally by commissioners under a special act, was turned over to the city many years ago, and the commission has ceased to exist. The sewer has been owned and controlled by the city ever since. The expense of the sewer was paid primarily by the issuance of certificates, but ultimately by the assessments upon the property benefited. By the charter of the city power is bestowed upon the common council to regulate the building and reparation of sewers. (Laws of 1871, chap. 461, p. 905.)

Under such circumstances the duty devolved upon the defendant to keep the sewer in repair so far as the property connected with it by private drains is concerned, and the defendant is liable for negligence to such persons if they sustain injury which would have been averted if the sewer had been maintained in order. (*McCarthy* v. *City of Syracuse*, 46 N. Y. 196.)

As the sewer was constructed and accepted by the city, the negligence in its maintenance created a liability against the city to the injured party. (*Barton* v. *City of Syracuse*, 36 N. Y. 58.)

If the sewer is negligently permitted to become obstructed or filled up so that it causes the water to flow back into cellars connected with it, there is a liability therefor on the part of the municipal corporation for the control of it; and it is bound to preserve and keep in repair the erections it has constructed so that they shall not become a source of annoyance to others. (Dillon on Mun. Corp. § 802.)

Although the duty resting upon the corporation to make streets, sidewalks and sewers is judicial in its nature, yet, after they are constructed, the duty of keeping them in repair is ministerial, and an omission in its performance imposes liability to the party injured. (*Hines* v. *City of Lockport*, 50 N. Y. 236.)

In the case of *Smith* v. *The Mayor* (66 N. Y. 295) the sewer was sufficient, but was temporarily obstructed. It was there held that the city was liable for negligence alone, and as there was no proof of notice the action failed.

In this case the proof of notice was ample. The liability of municipal corporations for injuries to property resulting from defec-

tive sewers has been maintained by the courts in cases analagous to this, based upon the duty of such corporations to exercise the powers conferred upon them by their charters to construct sewers and make their improvements for the benefit of property owners.

Our conclusion, therefore, is that the judgment should be reversed, with costs.

BROWN, P. J., and PRATT, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.